IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| JERRY HARRELSON, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO.: CV206-176 |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) |
| Defendant. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge L. Ellis Davis ("the ALJ" or "ALJ Davis") denying his claim for Supplemental Security Income payments. Plaintiff urges the Court to reverse the ALJ's decision and enter an award finding Plaintiff disabled, or, in the alternative, to remand this case for a proper determination of the evidence. Defendant asserts the Commissioner's decision should be affirmed.

Plaintiff filed an application for Supplemental Security Income payments on December 10, 2003, alleging that he became disabled due to pain in the hip which runs all the way down his leg, the need for a hip replacement, cysts, Crohn's disease, abdomen pain, recurrent staph infections, and trouble focusing. (Tr. at 17.) After his claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On August 19, 2005, ALJ Davis held a hearing at which Plaintiff appeared and

testified. Paul Dolan, a vocational expert, also testified at this hearing. ALJ Davis found that Plaintiff was not disabled within the meaning of the Act. (Tr. at 16.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Tr. at 5.)

Plaintiff, born on January 20, 1963, was forty-three (43) years old when ALJ Davis issued his decision. He has a high school education. (Tr. at 17.) His past relevant work experience includes employment as a shell fish bed worker, a deck hand on a fishing vessel, and a construction worker. (Id.)

## ALJ'S FINDINGS

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140, 107 S. Ct. at 2287. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140-141, 107 S. Ct. at 2291. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir.

2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141, 107 S. Ct. at 2291. If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work. Id. If the claimant is unable to perform his past relevant work, the final step of the evaluation process determines whether he is able to make adjustments to other work in the national economy, considering his age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142, 107 S. Ct. at 2291.

In the instant case, the ALJ followed this sequential process to determine that, after the alleged onset date of December 10, 2003, there was no evidence that Plaintiff engaged in substantial gainful activity. (Tr. at 25.) At Step Two, the ALJ determined that Plaintiff had disorders of the back and of the gastrointestinal system and adjustment disorder with depression, conditions considered "severe" under the Regulations. However, the ALJ also determined that Plaintiff's medically determinable impairments did not meet or medically equal a listed impairment. (Id.) The ALJ found that Plaintiff had the residual functional capacity for a significant range of sedentary work and a limited, but satisfactory, ability to deal with work stresses and in maintaining attention and concentration. At the next step, ALJ Davis concluded that Plaintiff could not perform his past relevant work. (Id.) ALJ Davis noted Plaintiff was a younger individual with a high school equivalent education and that transferability of skills was not an issue. ALJ Davis concluded there were a significant number of jobs in the

national economy Plaintiff could perform, such as a surveillance system monitor and an ink printer. (Id.)

## ISSUES PRESENTED

Plaintiff asserts ALJ Davis erred by failing to: 1) assign proper weight to the treating physicians' opinions; 2) properly consider and apply Listing 1.02A; and 3) apply the proper pain analysis.

## STANDARD OF REVIEW

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Walden v. Schweiker, 672 F.2d 835, 838-39 (11th Cir. 1982). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the

appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

## DISCUSSION AND CITATION TO AUTHORITY

I. **ALJ Davis' Consideration of Plaintiff's Treating Physicians' Opinions.**

Plaintiff contends the ALJ failed to assign the proper weight to the opinion of his treating physician and psychiatrist. Specifically, Plaintiff contends the ALJ failed to assign proper weight to Dr. Gregory Smith's opinion concerning the "extreme effects" of his advanced arthritic condition of the right hip. (Pl.'s Br., p. 8.) Plaintiff alleges this failure is problematic considering his instability arising from his hip impairment, which has led to injuries due to falling. Plaintiff also contends ALJ Davis did not credit the findings of Dr. David Patterson, which revealed mental impairments of "arguably disabling levels." (Id.) Plaintiff asserts Dr. Patterson's evaluation is the most comprehensive, detailed evidence of record and was produced as a result of a lengthy one-on-one examination and multiple psychological tests. Plaintiff contends he has "marked" limitations in the areas of social functioning, the ability to attend to tasks and concentrate, and in his activities of daily living.[1]

Defendant counters that Dr. Smith's opinion that Plaintiff is disabled and unable to work is not a medical opinion and is a determination to be made by the Commissioner. Defendant contends Dr. Smith did not offer any specific judgment as to Plaintiff's physical capacity other than that it would be difficult for Plaintiff to physically labor or sit. Defendant notes Plaintiff saw Dr. Smith once and did not develop a long-

---

[1] Plaintiff states "the term marked does not appear to be defined in the 12.00 et al., listings" and then cites the definition for "marked" as found in Listing 14.00(8). (Pl.'s Br., p. 10.) This Listing concerns individuals suffering from HIV (Human Immunodeficiency Virus). However, the term "marked" is very clearly defined in the Mental Disorders section of the Regulations (Listings 12.00). See 20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1, § 12.00C.

AO 72A
(Rev. 8/82)

5

term relationship with him. Defendant asserts Dr. Patterson did not qualify as a treating physician because his report seemed to be created solely for the benefit of Plaintiff's Social Security application. Defendant also asserts Dr. Patterson's report is deficient because it does not detail any actual limitations Plaintiff may have. Defendant further asserts Dr. Patterson's conclusions were based solely on Plaintiff's reports, and no objective testing was administered. Defendant contends Plaintiff does not have "marked" limitations in any area of functioning, and therefore, does not meet any listed impairment.

A treating source is defined as a claimant's:

> own physician, psychologist, or other acceptable medical source who provides [him], or has provided [him], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [a claimant]. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s). We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a nontreating source.

20 C.F.R. § 416.902, ¶ 13.

Given this framework, it is well-established that the opinion of a treating physician "'must be given substantial or considerable weight unless good cause is shown to the contrary.'" Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). "Good cause" exists when: (1) the treating physician's opinion is not supported by the record; (2) the record supports a

finding inconsistent with the treating physician's opinion; or (3) the treating physician's opinion is conclusory or inconsistent with his own medical records. Id. at 1241. When the ALJ determines that "good cause" exists to disregard a treating physician's opinion, the ALJ must clearly articulate the reasons supporting this decision. Id. When the Commissioner rejects the opinion of the treating physician, he must give "explicit and adequate" reasons for the rejection. Elam v. Railroad Retirement Board, 921 F.2d 1210, 1215 (11th Cir. 1991).

ALJ Davis found that Plaintiff did not suffer from any condition which met or equaled a Listing. In so doing, ALJ Davis reviewed Plaintiff's medical records, including those from Dr. Smith. ALJ Davis noted Dr. Smith examined Plaintiff during an initial office evaluation on March 8, 2004. According to Dr. Smith's records, Plaintiff informed him that he suffered from arthritis in his right hip with decreased motion and radiating pain distally. Plaintiff reported that is was difficult for him to sit for any period of time and walk. Dr. Smith's examination of Plaintiff revealed that he walked with a "very antalgic gait", he was tender to palpation within his groin, and he had pain with range of motion in his hip. (Tr. at 18, 143.) Dr. Smith took an x-ray of Plaintiff's right hip, which revealed degenerative joint disease with bone-on-bone arthritis. Dr. Smith opined Plaintiff had right hip arthritis, end stage, and that he needed a total hip replacement. Dr. Smith further opined that Plaintiff was disabled and unable to work due to his condition. (Tr. at 18, 143.) The ALJ noted Dr. Smith's opinion as to Plaintiff's disability status was a determination reserved for the Commissioner. (Tr. at 18.)

ALJ Davis also reviewed the reports of Dr. Donald Hinnant, a state agency psychological consultant, and Dr. Patterson. Dr. Hinnant determined Plaintiff had no

restrictions in his activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. The ALJ reviewed Dr. Patterson's evaluation, which largely consisted of Plaintiff's self-reports. (Tr. at 19-20, 221-26.)

ALJ Davis determined Plaintiff had a mental impairment. This determination required the ALJ to determine the severity of Plaintiff's impairment, whether the impairment met a Listing for mental impairments, and if the impairment did not meet a Listing, what the restrictions on Plaintiff's residual functional capacity were. ALJ Davis determined Plaintiff had mild limitations in his activities of daily living and in social functioning; the ALJ also determined Plaintiff had a moderate limitation in concentration, persistence, and pace and no episodes of decompensation of any duration. ALJ Davis noted this determination was partially based on Dr. Hinnant's findings, except that ALJ Davis found Plaintiff to have more restrictions in concentration, persistence, and pace than Dr. Hinnant did. ALJ Davis noted he gave no evidentiary value to Dr. Patterson's evaluation because it was "unsupported and contradictory to the objective evidence in the record." (Tr. at 22.) ALJ Davis also noted there was no evidence in the record that Plaintiff has had any mental health treatment, despite his testimony to the contrary. (Tr. at 22.) ALJ Davis further noted Plaintiff's report that his mental state had deteriorated even more because of his constant arthritic pain; however, Plaintiff was not involved in any pain management and had worked for a number of years with his traumatic past. (Id.)

The ALJ determined Plaintiff had a mild limitation in his activities of daily living, which refers to such activities as cleaning, shopping, and driving. ALJ Davis stated the

objective evidence suggested that Plaintiff was able to initiate and participate in activities independent of supervision or direction. ALJ Davis noted Plaintiff did not receive any treatment in the form of hospitalization or psychotropic medication prescriptions. ALJ Davis also noted that, despite Plaintiff's testimony that his activities were restricted due to pain, there was no objective evidence in the record to support this testimony. Specifically, there was no evidence that a medical doctor had put any restrictions on Plaintiff. (Tr. at 21.)

ALJ Davis also determined Plaintiff had a mild limitation in social functioning, which refers to a person's capacity to interact appropriately and to communicate effectively with others. ALJ Davis observed Plaintiff's earlier statements, which reflected a significant level of social functioning. ALJ Davis also observed that Plaintiff's treating and consulting sources did not report any significant deficit in Plaintiff's capacity for appropriate interaction with other people.

Plaintiff was found to have moderate limitations in concentration, persistence, and pace. ALJ Davis gave Plaintiff "the benefit of the doubt" and found Plaintiff had a "variable recall of detailed instructions." (Id.) The ALJ found Plaintiff had a variable ability for concentration, persistence, and pace, which reduced his ability to handle detailed tasks at times.

Finally, ALJ Davis noted Plaintiff's work history as a shell fish bed worker, deck hand, and construction worker, and that Plaintiff had no documented episodes of decompensation of any duration.

In finding Plaintiff did not suffer from any physical or mental impairments which were severe enough to classify him as disabled, ALJ Davis reviewed all of the evidence

AO 72A
(Rev. 8/82)

9

of record. ALJ Davis noted Dr. Smith's opinion that Plaintiff was disabled and unable to work because of his right hip, but ALJ Davis also noted this opinion is a determination reserved for the Commissioner. The ALJ discounted Dr. Patterson's psychological evaluation of Plaintiff, as he found this evaluation to be unsupported and contradictory to the objective evidence of record. ALJ Davis properly discounted the opinions of Drs. Smith and Patterson by giving adequate and explicit reasons for so doing. Additionally, the undersigned questions whether Drs. Smith and Patterson could be considered Plaintiff's treating physicians, as the evidence before the Court indicates Plaintiff was seen by both of these doctors on one occasion only; there is no evidence Plaintiff had an ongoing patient-doctor relationship with either of these doctors. In fact, Plaintiff recognizes the lack of "treating physician" status as to Dr. Smith in his Brief. (Pl.'s Br., 9.) ALJ Davis' determination that Plaintiff is not disabled within the meaning of the Act is supported by substantial evidence, and he applied the correct legal standards. Plaintiff's contention to the contrary is unavailing.

## II.  Plaintiff's Failure to Meet the Requirements of Listing 1.02A.

Plaintiff contends he "has already shown by medical evidence that he is unable to return to his past work as a result of the severe arthritis in his right hip." (Pl.'s Br., p. 13.) Plaintiff avers he has extreme dysfunction of his right hip joint, which Dr. Smith confirmed, and which has resulted in repeated falls. Plaintiff also avers his falls are a direct result of his inability to ambulate effectively. Plaintiff asserts that, when "properly considered and applied, the[re] is no doubt" he meets Listing 1.02A. (Pl.'s Br., p. 15.)

Defendant asserts that, although the medical evidence establishes Plaintiff's right hip is severely affected by arthritis with chronic joint pain, the evidence does not show a

resultant inability to effectively ambulate. Defendant alleges the record does not reveal Plaintiff uses a cane, crutch, or any other assistive device to help him walk. Defendant also alleges Plaintiff does not present any medical evidence to carry his burden that he meets Listing 1.02A.

In order to meet the requirements of Listing 1.02A, an individual must show he suffers from a major dysfunction of a joint, which is:

> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With: Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1, § 1.02A. An individual's inability to ambulate effectively is defined as:

> An extreme limitation of the ability to walk, i.e., an impairment that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent use of a hand-held assistive device that limits the functioning of both upper extremities. . . . To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1, § 1.00B2b.

While Dr. Smith reported Plaintiff walked with an "antalgic gait" in March 2004, Plaintiff's notes from the Augusta Arthritis Center in July 2004, indicate Plaintiff's gait

was coordinated and smooth. (Tr. at 232.) Of importance, there is no evidence before the undersigned that Plaintiff has had to use any assistive device to help him walk. Plaintiff could walk four aisles at a time at Walmart and did "go through the whole store." (Tr. at 363.) The ALJ's failure to find Plaintiff met the requirements of Listing 1.02A is supported by substantial evidence.

### III. The ALJ Analyzed Plaintiff's Allegations of Pain.

Plaintiff avers ALJ Davis' decision is not based on substantial evidence because his decision does not contain any pain or subjective complaint analysis. Plaintiff asserts that, although ALJ Davis noted several times that he alleged disability due to his pain and subjective symptoms associated with his multiple mental impairments, the ALJ failed to properly discuss and consider Plaintiff's allegations supported by the medical evidence and lay witness testimony.

Defendant alleges ALJ Davis found Plaintiff's allegations to be generally credible. Defendant also alleges that, in reaching this conclusion, ALJ Davis discussed Plaintiff's daily activities, the persistence of his pain, and the effects of his medication regimen. Defendant contends Plaintiff testified he could lift 20 to 25 pounds from the floor to his waist, which exceeds the scope of sedentary work.

In order to award benefits based on subjective complaints of pain, the following is required: (1) evidence of an underlying medical condition and either (2) objective medical evidence which confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991); Sewell v. Bowen, 792 F.2d 1065, 1068 (11th Cir.

1986). The Commissioner must consider a plaintiff's subjective allegations of pain if the above standard is met. McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987). If the ALJ decides not to credit a plaintiff's subjective pain testimony, the ALJ must articulate and express adequate reasons for doing so. Holt, 921 F.2d at 1223; Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1986).

ALJ Davis considered Plaintiff's subjective allegations of disability and pain and found them to be "generally credible." (Tr. at 23.) The ALJ noted, however, that Plaintiff could still perform the jobs submitted by the vocational expert even considering the limitations Plaintiff articulated. As noted above, ALJ Davis did not find the objective medical evidence supported a finding of disabled so as to award benefits to Plaintiff. The ALJ's determination in this regard is supported by substantial evidence. Plaintiff is not entitled to his requested relief.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that the decision of the Commissioner be **AFFIRMED**.

**SO REPORTED** and **RECOMMENDED**, this 10th day of April, 2007.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE